# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAUL ARELLANO,<br>CDCR #AH-1995,<br><br>　　　　　　　　　Plaintiff,<br><br>　v.<br><br>DOE #1,<br><br>　　　　　　　　　Defendant. | Case No.: 20-cv-01564-BAS-BGS<br><br>**ORDER DISMISSING FIRST AMENDED COMPLAINT FOR FAILING TO STATE A CLAIM PURSUANT TO 28 U.S.C. § 1915(e)(2) AND 28 U.S.C. § 1915A(b)** |

Before the Court is Plaintiff's First Amended Complaint ("FAC"). (ECF No. 8.) After screening the FAC pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b), the Court finds that it fails to state a claim and dismisses the case.

## I.  BACKGROUND

### A.  Procedural History

On August 12, 2020, Raul Arellano ("Plaintiff"), currently incarcerated at the Richard J. Donovan Correctional Facility ("RJD") located in San Diego, California, and proceeding *pro se*, filed a civil rights complaint pursuant to 42 U.S.C. § 1983. (Compl., ECF No. 1.) In addition, Plaintiff submitted a Motion to Proceed *In Forma Pauperis* ("IFP") pursuant to 28 U.S.C. § 1915(a). (ECF No. 2.) On September 8, 2020, the Court granted Plaintiff's Motion to Proceed IFP and dismissed his Complaint for failing to state a claim pursuant to 28 U.S.C. § 1915(e)(2) and 28 U.S.C. § 1915A(b). (ECF No. 5.)

Plaintiff was granted leave to file an amended pleading and on November 12, 2020, Plaintiff filed the FAC.

### B. Factual Background

Plaintiff's son came to RJD "on or about" July 8, 2017 to visit him. (FAC at 5.) However, following that day and up to June of 2019, Plaintiff alleges his son refused to visit him. (*See id.*) In June of 2017, Plaintiff's son was purportedly told that his visitation access was "revoked and he needed to apply for visit and write a letter to [the] Warden basically saying he was sorry for his misconduct." (*Id.*)

Plaintiff filed a grievance, two years later, on July 12, 2019 requesting that his son's visiting privilege be reinstated because his "son didn't do any misconduct to deserve a revocation." (*Id.*) Plaintiff's grievance was denied on November 22, 2019 and he was told to tell his son to "re-apply for visits again." (*Id.*)

In September of 2019, Plaintiff's son told him that the reason he stopped visiting him after July 8, 2017 was "because the officer knew his name" and told him he did not like Plaintiff because he "constantly files many grievances and lawsuits against prison personnel." (*Id.*) Plaintiff alleges that this officer, Defendant Doe #1, was aware of the grievances through "prison news or CDCR news." (*Id.*) Plaintiff alleges that Defendant Doe #1 "knew or should have known that his intimidation would lead to a total deprivation of [his] right for [his] son to visit [him]." (*Id.* at 6.)

Plaintiff seeks injunctive relief, $100,000 in compensatory damages, $120,000 in punitive damages, and $10,000 in unspecified damages. (*Id.* at 4.)

## II.   STANDARD OF REVIEW

As the Court previously informed Plaintiff, because Plaintiff is a prisoner and is proceeding IFP, his FAC also requires a pre-answer screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b). Under these statutes, the Court must *sua sponte* dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v.*

*Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)). "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (quoting *Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 681 (7th Cir. 2012)).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Rule 12(b)(6) requires a complaint "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Wilhelm*, 680 F.3d at 1121.

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.*; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

## III.   ANALYSIS

Plaintiff alleges that his First, Eighth and Fourteenth Amendment rights were violated when Defendant Doe #1 allegedly revoked Plaintiff's visitation privileges with his son on one occasion. (*See* FAC at 7–8, 17.) Plaintiff claims that he was unaware of his son's inability to visit with him until nearly two years after it purportedly happened. (*See id.* at 5.) He also claims he discovered that the suspension of his son's visiting privileges was for a period of one year. (*See id.* at 6.) Plaintiff does not identify the person whom he

claims is responsible for instituting this alleged suspension.

### A. Fourteenth Amendment Claim

First, Plaintiff's visitation claims brought under the Fourteenth Amendment fail. The Fourteenth Amendment provides that "[n]o state shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Bd. of Regents v. Roth*, 408 U.S. 564, 569 (1972). "To state a procedural due process claim, [a plaintiff] must allege '(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process.'" *Wright v. Riveland*, 219 F.3d 905, 913 (9th Cir. 2000) (quoting *Portman v. Cty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993)).

State statutes and prison regulations may grant prisoners liberty interests sufficient to invoke due process protections. *Meachum v. Fano*, 427 U.S. 215, 223-27 (1976). However, the Supreme Court significantly limited the instances in which due process can be invoked. Pursuant to *Sandin v. Conner*, 515 U.S. 472, 483 (1995), a prisoner can show a liberty interest under the Due Process Clause of the Fourteenth Amendment only if he alleges a change in confinement that imposes an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Id.* at 484 (citations omitted).

However, the Supreme Court has expressly held that the loss of visitation privileges for a limited duration is simply "within the range of confinement to be normally expected for one serving [an indeterminate sentence]," and therefore, not "atypical." *Overton v. Bazzetta*, 539 U.S. 126, 137 (2003) (finding prisoner's two-year loss of visitation privileges did not violate due process because it was "not a dramatic departure from accepted standards for conditions of confinement.") (citing *Sandin*, 515 U.S. at 485, 487). Even assuming Plaintiff's claim that his son's suspension of his visitation for a period of one year is true, this does not rise to the level of "atypical and significant hardship" and thus, Plaintiff has failed to allege facts sufficient to state a Fourteenth Amendment claim.

### B. Eighth Amendment Claim

Second, to the extent that Plaintiff's claims he was denied visitation in violation of Eighth Amendment rights, he also fails to state a claim. Plaintiff acknowledges that he was unaware his son was allegedly prohibited from visiting him until September 29, 2019 when his son told him. (*See* FAC at 5.) These claims are not "sufficiently grave to form the basis of an Eighth Amendment violation." *See Wilson v. Seiter*, 501 U.S. 294, 298 (1991).

In order to state an Eighth Amendment claim, Plaintiff must allege that the purported denial of visitation with his son amount to objectively "unquestioned and serious deprivations of [his] basic human needs," or deprived him of the "minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Again, the Supreme Court held in *Overton*, that while a visitation restriction "undoubtedly makes the prisoner's confinement more difficult to bear, . . . [] it does not . . . fall before the standards mandated by the Eighth Amendment." *Overton*, 539 U.S. at 136. Plaintiff may have a claim if the "withdrawal of all visitation privileges were permanent or for a much longer period of time," but that is not the case here. *Id.* After Plaintiff filed his grievance he was informed that his son's visitation suspension expired in 2017 and he was informed that his son may "reapply to visit [Plaintiff]." (FAC at 23, 24; Second Level App. Resp. dated Nov. 22, 2019.) Plaintiff does not allege that there was any attempt on his part, or on the part of his son, to reapply for his visitation rights. In addition, Plaintiff does not allege that his son was prevented from applying for visitation privileges as instructed.

### C. First Amendment Claim

Plaintiff has also failed to state a First Amendment claim. Within the prison context "[a]n inmate does not retain rights inconsistent with proper incarceration . . . [and] freedom of association is among the rights least compatible with incarceration." *Overton*, 539 U.S. at 131. In addition, the Ninth Circuit has "declined to recognize a prisoner's constitutional right to receive visits." *Dunn v. Castro*, 621 F.3d 1196, 1202 (9th Cir. 2010). The facts here demonstrate that Plaintiff was denied visitation by his son on one occasion. By Plaintiff's own factual admission, his son did not attempt to visit him again. As stated

above, prison officials informed Plaintiff that his son could re-apply to visit him. Instead, Plaintiff rejects that offer and claims that his son "shouldn't be required to apply all over again." (FAC at 4.) These facts simply do not rise to the level of a violation of Plaintiff's First Amendment rights when he had a remedy available and he chose not to use this remedy that could accommodate his asserted right to visitation. *See Overton*, 539 U.S. at 136.

Further, Plaintiff claims that Defendant Doe #1, the only named Defendant, revoked his son's visitation privileges because he did not "like [Plaintiff] due to him filing grievances against his partners, prison officials, and doctors [and] nurses." (FAC at 11.) The Court understands this to be a First Amendment retaliation claim.

A retaliation claim has five elements. *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009). First, Plaintiff must allege that the retaliated-against conduct is protected under the First Amendment. *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012).[1] Second, Plaintiff must allege Defendants took adverse action against him.[2] *Rhodes*, 408 F.3d at 567. Third, Plaintiff must allege a causal connection between the adverse action and the protected conduct. *Watison*, 668 F.3d at 1114. Fourth, Plaintiff must allege the "official's acts would chill or silence a person of ordinary firmness from future First Amendment activities." *Rhodes*, 408 F.3d at 568 (internal quotation marks and emphasis omitted). Fifth, Plaintiff must allege "that the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution . . . ." *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985); *Watison*, 668 F.3d at 1114–15.

As stated above, Plaintiff attaches a response to his grievance that indicates that his son's visitation privileges were suspended for approximately a month and he was invited to re-apply for these privileges. (*See* FAC at 23, 24; Second Level App. Resp. dated Nov.

---

[1] The filing of an inmate grievance is protected conduct. *Rhodes v. Robinson*, 408 F.3d 559, 568 (9th Cir. 2005).

[2] The adverse action need not be an independent constitutional violation. *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995). "[T]he mere threat of harm can be an adverse action...." *Brodheim*, 584 F.3d at 1270.

22, 2019.)  Plaintiff is not aware of the identity of the officer who allegedly interacted with his son.  Moreover, Plaintiff admits in his FAC that he was unaware that this alleged interaction between his son and the unknown officer occurred until almost two years after it purportedly occurred.  In that timeframe, there was opportunity for Plaintiff's son to reapply for visitation privileges.  Here, then, the purported harm is the denial of his son's visitation for a period of thirty days which Plaintiff was unaware of until more than two years after this event purportedly took place.  Based on the facts as alleged, Plaintiff fails to sufficiently demonstrate that he "suffered some other harm," *Brodheim*, 584 F.3d at 1269, that was "more than minimal." *Rhodes*, 408 F.3d at 568 n. 11; *see also Watison*, 668 F.3d at 1114 (holding that inconsequential or de minimis harms do not constitute adverse actions).  Accordingly, the Court finds that Plaintiff has failed to state a plausible First Amendment retaliation claim upon which relief may be granted.

For all these reasons, Plaintiff's First, Eighth and Fourteenth Amendment claims are **DENIED** for failing to state a claim upon which relief may be granted.

### D.  Request to Bring a Claim on Behalf of Son

Plaintiff seeks to bring a claim of "use of force by officer against visitor" and "verbal abuse in violation of [Fourteenth Amendment]" on behalf of his son.  (FAC at 18.)  However, "[a] litigant appearing *in propria persona* has no authority to represent anyone other than himself." *Russell v. Untied States*, 308 F.2d 78, 79 (9th Cir. 1962); *see also C.E. Pope Equity Trust v. United States*, 818 F.2d 696, 697 (9th Cir. 1987) (holding that while a non-attorney may represent himself, he has no authority to appear as an attorney for others).  Therefore, Plaintiff's attempt to bring a claim on behalf of his son is **DENIED**.

### E.  Leave to Amend

Because Plaintiff has already been provided a short and plain statement of his pleading deficiencies, as well as an opportunity to amend those claims to no avail, the Court finds granting further leave to amend would be futile. *See Gonzalez v. Planned Parenthood*, 759, F.3d 1112, 1116 (9th Cir. 2014) ("'Futility of amendment can, by itself, justify the denial of . . . leave to amend.'") (quoting *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir.

1995)); *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) ("[W]here the plaintiff has previously been granted leave to amend and has subsequently failed to add the requisite particularity to its claims, [t]he district court's discretion to deny leave to amend is particularly broad.") (internal quotation marks omitted) (second alteration in original).

## III.    CONCLUSION AND ORDERS

For the reasons discussed, the Court **DISMISSES** this civil action without further leave to amend for failure to state a claim upon which § 1983 relief can be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1), **CERTIFIES** that an IFP appeal would not be taken in good faith pursuant to 28 U.S.C. § 1915(a)(3), and **DIRECTS** the Clerk of Court to enter a final judgment of dismissal and close the file.

**IT IS SO ORDERED.**

**DATED: December 2, 2020**

Hon. Cynthia Bashant
United States District Judge